FILED
2011 Mar-11 PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. JOHNSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:09-CV-2227-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I. Introduction.

Plaintiff, Michael W. Johnson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Johnson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Johnson was thirty-nine years old at the time of the Administrative

Law Judge's ("ALJ's") decision, and he has an eleventh grade education. (Tr. at 28, 31-32.) His past work experience includes employment as a truck driver, long-haul or tractor trailer. (Doc. 8 at 2, Tr. at 35.) Mr. Johnson claims that he became disabled on May 25, 2006, due to epilepsy and diabetes mellitus. (Doc. 8 at 1-2, Tr. at 36-37.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Johnson "meets the insured status requirements of the Social Security Act through December 31, 2009." (Tr. at 13.) He further determined that Mr. Johnson had not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Plaintiff's seizure disorder, diabetes mellitus, hypertension, and obstructive sleep apnea are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that Plaintiff did not have an impairment or combination of impairments that either met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 16. The ALJ determined that Mr. Johnson has the residual functional capacity to "perform medium work. Due to claimant's seizure disorder, he can never climb, be exposed to extreme could or heat, fumes, noxious odors, dusts, mists, gases, or poor ventilation, be around moving mechanical parts, work in high exposed places, or drive automotive equipment." *Id.*

The ALJ then determined that, Plaintiff "is unable to perform any past relevant work." (Tr. at 18.)  Based on Plaintiff's age, education, work experience, and RFC, the ALJ found jobs that exist in significant numbers in the national economy that Plaintiff can perform.  These jobs include: work as an inspector (900 in the state; 49,000 nationally); a labeler (800 in the state; 40,000 nationally); and a tester (1,000 in the state; 53,000 nationally).  *Id*. at 19-20.  Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from May 25, 2006 through the date of this decision." *Id*. at 20.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.

1984).

III. Discussion.

Mr. Johnson alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 8 at 10-12.) Plaintiff claims the "ALJ erred in his conclusion that the Plaintiff did not have an impairment or combination of impairments meeting or medically equaling a listed impairment." *Id*. at 10. Specifically, Plaintiff claims the ALJ "should have properly considered the facts of the claim under Listing 11.03 for non-convulsive epilepsy." *Id*.

Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Swindel v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). When there is a combination of impairments, the claimant may be found disabled even though none of the individual impairments, including pain, is disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

The Eleventh Circuit has held that an ALJ's statement that:

> [B]ased upon a thorough consideration of all evidence, the ALJ concludes the appellant is not suffering from any impairment, *or combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months

is sufficient evidence of proper consideration of the claimant's combined impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1987). *See also Jones v. Department of Health and Human Serv's*, 941 F.2d 1529, 1553 (11th Cir. 1991) (holding that ALJ's statement that though claimant "'has severe residuals of an injury' he does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'" to be sufficient evidence of combined impairment consideration).

In the instant case, the ALJ determined that Plaintiff "does not have

an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1". (Tr. at 16). This language alone is sufficient to demonstrate that the ALJ properly considered Plaintiff's combined impairments. *See Wheeler*, 784 F.2d 1076 and *Jones*, 941 F.2d 1553. Thus, the Court will turn to whether Plaintiff satisfied the requirements of Listing § 11.03.

A plaintiff is disabled if his impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). The plaintiff has a heavy burden in meeting a listing, as "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)). Furthermore, "[f]or a claimant to show that his

impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing).  Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is medical equivalency to a Listing if the listing is defined in terms of functional criteria. *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir. 1993).

In the present case, while Plaintiff contends the ALJ erred in failing to find Plaintiff disabled under Listing 11.03 (Doc. 8 at 12), the medical evidence and Plaintiff's own testimony prove otherwise.  Listing 11.03 states:

> Epilepsy—non-compulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of

unconventional behavior or significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03.  Further, the criteria under § 11.03 "can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment."  20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00A.

In the present case, one of Plaintiff's treating physicians, Dr. Michael A. Hennigan, noted the onset of a seizure disorder on August 7, 2006.  (Tr. at 14.)  Plaintiff was referred to Dr. Lynn Boyer for a neurological consultation concerning the seizures.  *Id*. at 14, 155-57.  On August 10, 2006, Plaintiff informed Dr. Boyer that he had experienced around ten "spells" during the six-week period prior to August 10.  Dr. Boyer noted that it was "very likely" Plaintiff had partial complex seizures and that he suffered from obstructive sleep apnea, which Dr. Boyer felt could be "a factor increasing frequency of seizure activity."  *Id*. at 14, 155.  There was no diagnosis of epilepsy at that time.  While an EEG was interpreted as abnormal due to a sharp wave focus in the left frontotemporal region, Dr. Boyer reported that a complete comprehensive neurological examination

was performed and was normal, as was an MRI of his brain. *Id.* at 14, 156. Further, although Dr. Boyer determined that the partial complex seizures would "be devastating to his job with a commercial license," she concluded that there are most definitely other jobs he will be able to perform. *Id.* at 14, 155.

On September 5, 2006, Plaintiff returned to Dr. Hennigan, at which time his wife reported he was suffering from seizures every other day. (Tr. at 14.) Due to his seizures, Plaintiff was next evaluated on November 14, 2006, by Dr. Stafford Conway. Dr. Conway increased Plaintiff's dosage of Keppra and instructed him to continue with Trileptal. *Id.* at 14-15. 285. Plaintiff returned to Dr. Conway on December 11, 2006, complaining that he was suffering from complex partial seizures every third day. Although an MRI of the brain produced normal results, Dr. Conway diagnosed Plaintiff with intractable complex partial epilepsy. *Id.* at 15, 282. The same diagnosis resulted from a February 13, 2007 visit. However, on April 2, 2007, Plaintiff reported to Dr. Conway that his medication was improving his seizure frequency. *Id.* at 15, 277. Finally, on June 4, 2007, Plaintiff reported that, since the April 2, 2007 visit, he had only had one "event,"

which had occurred five to six weeks prior to June 4. Although Plaintiff requested that he be able to return to commercial truck driving, Dr. Conway again diagnosed him with intractable complex partial epilepsy and advised that Plaintiff not return to driving until a repeat neurological evaluation could be performed, at least five months later. *Id.* 15, 275

On August 23, 2007, Plaintiff returned to Dr. Hennigan and denied having any neurological symptoms or weakness. (Tr. at 15, 289.) Despite that claim, on September 4, 2007, Plaintiff was examined by Dr. Smitha Persaud, at which time Plaintiff reported two or more seizures a week. However, Plaintiff claimed he believed the seizures were related to being outside in the extreme heat. *Id.* at 15, 273-74. His neurological exam produced normal results and Dr. Persaud noted that he was not sure why Plaintiff's seizures were difficult to control. *Id.* Dr. Persaud saw Plaintiff again on October 17, 2007. Plaintiff again claimed that he was having two or more seizures per week, however EEG results were within normal limits. Dr. Persaud noted he was "suspicious" that the seizures were not true epileptic seizures. Although Dr. Persaud referred Plaintiff to the epilepsy center at UAB for an appointment on December 9, 2007, the record contains

no further records from Dr. Persaud, nor does it contain any results from an evaluation at UAB. *Id*. at 15, 271-72. Finally, in a December 4, 2007 visit to Dr. Hennigan, Plaintiff reported having seizures one to two times weekly. *Id*. at 15-16, 287.

Despite his last report to Dr. Hennigan, Plaintiff himself testified that his medications have helped his seizures and he has "one about once a week." He further testified that he does not have any problems with pain. (Tr. at 18, 41, 48.) Plaintiff claimed that he could not tolerate excessive heat or stress, yet the ALJ noted that Plaintiff's hands were "very dirty and it appeared as if he had been doing some type of outdoor work." *Id*. at 18.

Listing 11.03 specifically requires that Plaintiff must have seizures "occurring *more frequently than once weekly* in spite of at least 3 months of prescribed treatment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03 (emphasis added.) Plaintiff's own testimony is that he only has one about once a week. (Tr. at 41.) Additionally, the medical records indicate that there were times Plaintiff did not complain of seizures at all and at least one doctor, Dr. Persaud, questioned whether Plaintiff was suffering from

true epileptic seizures.

Based on the medical evidence of record and Plaintiff's testimony, the ALJ was correct in determining that Plaintiff did not meet the requirements of Listing 11.03.

IV. Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this 11th day of March 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671